UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Michael L. Domenichello

    v.                                                                               Civil No. 24-cv-005-TSM
                                                                                                Opinion No. 2024 DNH 053

Tidal Basin Government Consulting, LLC

## O R D E R

Plaintiff Michael L. Domenichello brought this Family and Medical Leave Act ("FMLA") and breach-of-contract suit against defendants Tidal Basin Government Consulting, LLC ("Tidal Basin"); Michael Baker International, Inc.; Rising Phoenix Holdings Corporation; and Adjusters International Consulting, LLC. Defendants move to dismiss (doc. nos. 19, 20) the Amended Complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. Domenichello objects to the motions to dismiss, and he moves for leave to file a Second Amended Complaint (doc. no. 22).[1] Defendants object to the proposed amendment.

For the following reasons, the motions to dismiss by Michael Baker International, Rising Phoenix, and Adjusters International are granted. The motion to dismiss by Tidal Basin is granted as to Count III but otherwise denied. Domenichello's motion to amend is denied.

## BACKGROUND

### *Domenichello's Employment and Defendants' Alleged Relationship*

The following facts are drawn from the Amended Complaint unless otherwise noted. See United States ex rel. Zotos v. Town of Hingham, 98 F.4th 339, 342 (1st Cir. 2024). Defendants provide "consulting services to governmental and non-governmental entities in the field of

---

[1] The proposed Second Amended Complaint is substantively identical to the Amended Complaint except that it adds three additional defendants: Tidal Basin Holdings, LLC; Tidal Basin Holdco, LLC; and DC Capital Global, Inc.

emergency disaster relief." Doc. no. 11 ¶ 6. Their principal places of business are New York or Pennsylvania. Tidal Basin and Michael Baker International have registered agents in New Hampshire, but the other defendants do not. Domenichello alleges that defendants are related; specifically, Michael Baker International is an "affiliate" of Tidal Basin, Rising Phoenix is a parent company of and "joint employer" with Tidal Basin, and Adjusters International is a "joint employer" with Tidal Basin. Id. ¶¶ 3-5. Domenichello does not provide further allegations in the Amended Complaint about the relationships among defendants.

In October 2019, Tidal Basin hired Domenichello, who is a New Hampshire resident, as a project manager. Tidal Basin paid Domenichello, and it "issued work assignments" to Domenichello from its Utica, New York offices. See id. ¶¶ 13, 18. Domenichello also reported to Tidal Basin in New York. A Tidal Basin manager supervised Domenichello, and Domenichello submitted employment-related documents to Tidal Basin's human resources department. Id. ¶¶ 22-24, 26.

In four years in his position, Domenichello worked on "numerous emergency management campaigns" related to disaster relief. Id. ¶ 21. These campaigns included disaster relief efforts in Puerto Rico, California, and Florida. When not requested to work at a particular location by his employer or a client, Domenichello usually chose to work from his residence in New Hampshire.

Domenichello alleges that the other defendants – Michael Baker International, Rising Phoenix, and Adjusters International – also employed him, but he provides limited additional factual allegations about the nature of his alleged employment with respect to those defendants. Specifically, Domenichello alleges that Rising Phoenix provided him with "the offer of employment," but he does not allege what the "offer of employment" said or provided as to terms. Id. ¶ 11. Domenichello also alleges that Rising Phoenix and Adjusters International provided other

materials related to his hiring, such as training and policy documents.  Id. ¶¶ 11-12.  Domenichello does not allege any facts about how Michael Baker International was involved with his employment or otherwise associated with the other defendants.

In addition, Rising Phoenix provided Domenichello with an employee handbook that contained a progressive discipline policy.  The progressive discipline policy stated that employees would be provided verbal and written warnings in a progression before termination.  Alongside their motions to dismiss, defendants filed an excerpt of the employee handbook referenced by Domenichello in his Amended Complaint.[2]  Immediately before describing the progressive discipline policy, the employee handbook states as follows:

> Nothing in this policy provides any contractual rights regarding employee discipline or counseling, nor should anything in this policy be read or construed as modifying or altering the employment-at-will relationship between the company and its employees.

Doc. no. 19-2 at 1; Doc. no. 20-2 at 1.

### *FMLA Request and Subsequent Termination*

In June 2023, Domenichello told Tidal Basin that he had upcoming medical appointments related to potential back and shoulder injuries, and, in September 2023, Domenichello learned that he needed surgery for ruptured discs in his back.  Domenichello also required surgery for a torn rotator cuff.  On September 20, 2023, Domenichello requested that Tidal Basin provide him a two-to-six week leave of absence for the rotator cuff surgery.  He also provided Tidal Basin with a neurosurgeon's assessment for his back injury.  On October 12, 2023, Domenichello submitted

---

[2] The court may consider the excerpt of the employee handbook at the motion to dismiss stage even though Domenichello did not attach it to his Amended Complaint because Count III depends on whether the employee handbook is a contract, Domenichello references the handbook in the Amended Complaint, and Domenichello does not dispute the authenticity of the excerpt filed by defendants.  See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004); Beddall v. State Street Bank & Tr. Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

FMLA paperwork to Tidal Basin's human resources department in advance of his rotator cuff surgery.

Later the same day, however, Domenichello's manager (Tidal Basin assistant vice president Mario Sinatra) and Tidal Basin's human resources vice president told Domenichello they were terminating his employment. Id. ¶ 27 ("Tidal Basin's Assistant Vice President Mario Sinatra and Human Resources Vice President Lori Nichols" told Domenichello that October 12, 2023, would be his "last day with Tidal Basin."). Tidal Basin's asserted reason for terminating Domenichello's employment was that he undermined Sinatra and disclosed confidential client information. Domenichello denies both accusations.

Domenichello brought this lawsuit in early January 2024. In his Amended Complaint, Domenichello asserts claims against defendants for interference with his rights under the FMLA (Count I); for retaliation for his exercise of rights under the FMLA (Count II); and for breach of the implied covenant of good faith and fair dealing (Count III).

### *Additional Facts for Personal Jurisdiction*

In addition to the facts alleged in the Amended Complaint, under Federal Rule of Civil Procedure 12(b)(2) the court may consider evidence submitted by the parties to assess personal jurisdiction. Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 147 (1st Cir. 2021). To support his argument that the court has personal jurisdiction over defendants, Domenichello filed an affidavit and several related exhibits. In his affidavit, Domenichello avers that he applied for employment, interviewed, received his offer of employment, and signed all employment forms in New Hampshire. Defendants provided Domenichello with a laptop and reimbursed his costs for a business cell phone line with a New Hampshire phone number. Domenichello also asserts that in 2023 he performed much of his work in New Hampshire, and he filled out a form weekly that

informed defendants about his work location.  Domenichello also asserts he communicated with Tidal Basin about his FMLA requests from New Hampshire.  Finally, Domenichello identifies business relationships involving Tidal Basin and the State of New Hampshire and the City of Manchester, New Hampshire.

## DISCUSSION

Defendants move to dismiss Domenichello's complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.  Domenichello objects and moves to amend the complaint.  The court addresses defendants' motions to dismiss first and Domenichello's motion to amend second.

### I.   Defendants' Motions to Dismiss (Doc. Nos. 19, 20)

#### A.   Personal jurisdiction

In their motions to dismiss, defendants argue, as a threshold matter, that the court lacks personal jurisdiction over them.  They contend that the only contact between them and New Hampshire is Domenichello and the mere employment of a remote worker is insufficient to establish personal jurisdiction.  Domenichello responds that defendants consented to personal jurisdiction and that regardless of consent, defendants have sufficient minimum contacts with New Hampshire.

When a challenge to personal jurisdiction is raised, the plaintiff bears the burden of demonstrating personal jurisdiction.  Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002).  In the absence of an evidentiary hearing, the court uses the prima facie standard to evaluate whether the court has personal jurisdiction over a defendant.  De Laire v. Voris, No. 21-cv-131-JD, 2021 WL 1227087, at *2 (D.N.H. Apr. 1, 2021).  Under the prima facie standard, the court takes the plaintiff's properly supported proffers of evidence as true

5

and construes those proffers in the light most favorable to the plaintiff. Nandjou, 985 F.3d at 147; see Lin v. TipRanks, Ltd., 19 F. 4th 28, 33 (1st Cir. 2021) (explaining that the court takes the "specific facts affirmatively alleged by the plaintiff as true" regardless of whether they are disputed but, at the same time, does not credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts"). The court also considers any undisputed facts offered by the defendant. Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).

      i.   *Tidal Basin and Michael Baker International consented to personal jurisdiction in New Hampshire.*

To start, Domenichello asserts that defendants consented to personal jurisdiction by waiving service of process and entering general notices of appearances in this case. Domenichello also alleges that Tidal Basin and Michael Baker International have registered agents in New Hampshire, and he asserts that he served process on those registered agents. Doc. no. 26 at 7-8 ("Defendants Tidal Basin and Michael Baker were served via the N.H. Longarm Statute by way of the N.H. Secretary of State and directly served upon the in-state service of process agents for each defendant."); doc. no. 11 ¶¶ 2-3 (identifying registered agents for Tidal Basin and Michael Baker International).

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 55 (1st Cir. 2010) (quoting Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)). "It is well-settled that a corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority." Holloway v. Wright & Morrissey, Inc., 739 F.2d 695, 697 (1st Cir. 1984) (Stewart, J.).

Tidal Basin and Michael Baker International do not dispute that they have registered agents in New Hampshire nor that they authorized these agents to accept service of process for suits of this kind, i.e., one arising out of their (alleged) employment of the plaintiff in New Hampshire. See RSA 304-C:181(I) ("A foreign limited liability company's registered agent is the agent for service of process, notice, or demand required or permitted by law to be served on the foreign limited liability company."); RSA 293-A:15.10 ("The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation."). Therefore, Tidal Basin and Michael Baker International consented to suit in New Hampshire, and this court has personal jurisdiction over them. See Holloway, 739 F.2d at 697.

    ii. *Rising Phoenix and Adjusters International did not consent to or concede personal jurisdiction in New Hampshire.*

Rising Phoenix and Adjusters International, however, did not consent to or concede personal jurisdiction in New Hampshire. Domenichello identifies no New Hampshire registered agent for these defendants. Domenichello points to their waivers of service, but "[w]aiving service of a summons does not waive any objection to personal jurisdiction or to venue." Fed. R. Civ. P. 4(d)(5). Indeed, the form waivers of service (Form AO 399) filed by defendants state that they do not waive any argument that the court lacks jurisdiction. Doc. no. 7; doc. no. 8. Likewise, Rising Phoenix's and Adjusters International's attorneys' notices of appearance and their motion to extend time to file their responsive pleadings do not equate to consent to personal jurisdiction. See Darby v. Lelling, No. 20-cv-11115-DJC, 2022 WL 220313, at *4 (D. Mass. Jan. 25, 2022) ("Linskey's counsel entering a notice of appearance and filing a motion on Linskey's behalf does

not alone constitute waiver of personal jurisdiction.").[3] Accordingly, the court may exercise personal jurisdiction over Rising Phoenix and Adjusters International only if doing so would be consistent with the restrictions imposed by the Fourteenth Amendment's Due Process Clause.[4]

### iii. *Rising Phoenix and Adjusters International do not have sufficient minimum contacts with New Hampshire.*

The Fourteenth Amendment's Due Process Clause prohibits a court from asserting personal jurisdiction over a defendant unless it has sufficient minimum contacts with the forum state to allow it to reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

---

[3] Domenichello grounds his contention that defendants' "general" notices of appearance waived their challenges to personal jurisdiction on a rule applied by New Hampshire state courts. See doc. no. 26 at 8 ("In New Hampshire, a defendant who files a general appearance waives all objections to personal jurisdiction."). That rule, however, appears to have been eliminated. See N.H. Super. Ct. R. 9(e) & cmt. ("Under prior law, a litigant desiring to make such challenges was required to enter a special appearance and to file a motion to dismiss within 30 days after being served. If the litigant failed to follow this course . . . the litigant would be deemed to have submitted to the court's jurisdiction and thus waived his or her challenge to personal jurisdiction . . . . Under the new rule . . . the litigant is not required to enter a 'special appearance,' nor will the litigant be deemed to have waived such challenges and submitted to the court's jurisdiction by filing an Answer or other pleadings or motions that raise issues aside from personal jurisdiction . . . ."). Regardless, Domenichello offers no persuasive reason for why this court should apply state as opposed to federal rules on waiver. See Hanna v. Plumer, 380 U.S. 460, 471 (1965) (discussing differences between substantive and procedural law and holding that district courts must apply federal procedural rules in federal civil actions).

[4] Even though this case arises under federal-question jurisdiction, the court applies the minimum contacts standard under the Fourteenth Amendment (as opposed to the Fifth Amendment), because (1) the FMLA, 29 U.S.C. § 2601 et seq., does not authorize nationwide service of process and (2) New Hampshire's long-arm statute, RSA 510:4(I), is coextensive with the Fourteenth Amendment. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085-86 (1st Cir. 1992) (explaining the interaction between the Fifth Amendment, Fourteenth Amendment, and Federal Rule of Civil Procedure 4 that results in the Fourteenth Amendment's application in some federal-question cases); Sarah's Hat Boxes, L.L.C. v. Patch Me Up, L.L.C., No. 12-cv-399-PB, 2013 WL 1563557, at *3 n.4 (D.N.H. Apr. 12, 2013) (applying Fourteenth Amendment due process analysis to Lanham Act claim).

The court may have personal jurisdiction over a defendant through either "general" or "specific" jurisdiction. See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019).

Domenichello argues only specific jurisdiction. Doc. no. 26 at 12 ("[I]n this case the plaintiff only asserts specific jurisdiction . . . ."). Specific jurisdiction may exist when (1) the plaintiff's claims "directly arise out of, or relate to, the defendant's forum-state activities"; (2) those contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable"; and (3) the exercise of jurisdiction is reasonable. See PREP Tours, Inc., 913 F.3d at 17 (quoting United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1089).

Domenichello failed to carry his burden to show that this court holds personal jurisdiction over Rising Phoenix and Adjusters International. Effectively, Domenichello argues that Rising Phoenix and Adjusters International have two contacts with New Hampshire: (1) their facilitation of his remote work from New Hampshire and their ultimate termination of his employment, which was received by him in New Hampshire; and (2) the business ties between Tidal Basin and New Hampshire. As to Rising Phoenix and Adjusters International, these contacts are not sufficient to meet the purposeful availment prong of the personal jurisdiction test.

First, the allegations and evidence that Rising Phoenix or Adjusters International employed Domenichello are thin at best, and Domenichello makes no effort to satisfy any standard under which the court may pierce Tidal Basin's corporate veil in the personal jurisdiction context. See United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1096 (stating that the court was "highly skeptical" about applying an "integrated enterprise theory" in "the jurisdictional context" and

9

applying other theories of corporate veil piercing). Domenichello's work in New Hampshire is not a contact as to Rising Phoenix or Adjusters International.

But even assuming that Rising Phoenix or Adjusters International could be considered Domenichello's employer, a nonresident defendant's employment of a remote worker in the forum state is not, own its own, sufficient to show purposeful availment. See, e.g., Phillips v. Prairie Eye Ctr., 530 F.3d 22, 25 (1st Cir. 2008) (holding that defendant's mere awareness that plaintiff lived in Massachusetts and plaintiff's receipt of a contract in Massachusetts was insufficient to show purposeful availment); Avey v. Clearbridge Tech. Group, LLC, No. 23-00025-LEK-KJM, 2023 WL 8622603, at *5 (D. Haw. Dec. 13, 2023) (finding no personal jurisdiction when employee's "decision to work remotely in Hawai'i was a unilateral personal decision"); Esslinger v. Endlink, LLC, No. 22-cv-153-TCB, 2023 WL 3931505, at *6 (N.D. Ga. Apr. 13, 2023) ("Endlink's engagement of a remote employee . . . alone cannot justify the exercise of specific jurisdiction."); Crosson v. TMF Health Quality Institute, No. 20-18800 (ZNQ), 2023 WL 2609048, at *5 (D.N.J. Mar. 23, 2023) ("[T]he specific allegations set forth by Plaintiff fall short of demonstrating that Defendants conducted any business in New Jersey or targeted New Jersey in any purposeful way beyond permitting Plaintiff to work remotely as a matter of his own convenience."); Schlectweg v. Celularity, Inc., No. 3:21-CV-785 (SVN), 2022 WL 541507, at *9 (D. Conn. Feb. 23, 2022) ("A defendant's knowledge that an employee 'happens to reside in the forum state and conduct some work from home does not constitute purposeful availment.'") (quoting Perry v. Nat'l Ass'n of Home Builders of U.S., No. TDC-20-0454, 2020 WL 5759766, at *4-*5 (D. Md. Sept. 28, 2020)); Fields v. Sickle Cell Disease Assoc. of Am., Inc., 376 F. Supp. 3d 647, 652 (E.D.N.C. Sept. 26, 2018) (finding no personal jurisdiction in North Carolina when plaintiff was defendant's only employee in North Carolina and maintained no other presence there), aff'd, 770 Fed. Appx. 77

(4th Cir. May 3, 2019). Rather, additional facts – such as a requirement to work remotely in the forum state, the maintenance of offices in the forum state, the possession of property in the forum state, or employment of employees other than the plaintiff in the forum state – are typically necessary. See Fields, 376 F. Supp. 3d at 652. Domenichello makes no allegation and submits no evidence that Rising Phoenix or Adjusters International required him to work in New Hampshire. There is no indication that they maintained any offices in New Hampshire, possessed any property in New Hampshire, or employed any other employees in New Hampshire. At bottom, the facts merely reflect Domenichello's unilateral choice to reside in New Hampshire.

Second, Tidal Basin's business ties in New Hampshire are not contacts as to Rising Phoenix and Adjusters International because the evidence submitted by Domenichello about these business ties does not reference Rising Phoenix or Adjusters International. And, even if Tidal Basin's business ties could be imputed to Rising Phoenix or Adjusters International, the business ties with New Hampshire are not relevant to Domenichello's claims in this case. Therefore, they cannot advance Domenichello's argument as to the purposeful availment prong. See United Elec., Radio & Mac. Workers of Am., 960 F.2d at 1089-90 ("Of the forum-related contacts mentioned by the district court, only Lindsay's involvement in negotiation of the collective bargaining agreement can be thought to give rise, or relate, to this cause of action. . . . For purposes of the second and third prongs of the test, therefore, we can restrict our inquiry to Lindsay's involvement in the labor negotiations.").

In sum, Domenichello has not established a prima facie case of personal jurisdiction over Rising Phoenix or Adjusters International. Domenichello's claims against Rising Phoenix and Adjusters International are therefore dismissed without prejudice.

B.  Failure to state a claim against the remaining defendants (Michael Baker International and Tidal Basin)

Beyond personal jurisdiction, defendants move to dismiss the Amended Complaint for failure to state claims upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). Specifically, Rising Phoenix, Michael Baker International, and Adjusters International move to dismiss all the claims against them, while Tidal Basin moves to dismiss only Count III, which alleges breach of the implied covenant of good faith and fair dealing. Because the court lacks personal jurisdiction as to Rising Phoenix and Adjusters International, it addresses only the arguments as they apply to Michael Baker International and Tidal Basin.

In a Rule 12(b)(6) analysis, the court must separate the complaint's "factual" allegations from its "conclusory" allegations. Zotos, 98 F.4th at 343; Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024). With the conclusory allegations disregarded, the court must evaluate "whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Zotos, 98 F.4th at 343 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). To state a claim, the allegations "must suggest more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). That is, the claim must be "plausible," which means more than "merely conceivable." Lawrence Gen. Hosp. v. Continental Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024).

i.  *The Amended Complaint does not state claims against Michael Baker International for FMLA violations.*

As to Counts I and II, Michael Baker International argues that it was not Domenichello's employer, so it cannot be held liable for any violation of the FMLA or retaliation in response to the exercise of rights protected under the FMLA. Domenichello responds that Michael Baker

International should be considered part of the same "business enterprise" as Tidal Basin because Tidal Basin is a wholly owned subsidiary of Michael Baker International.

Under the FMLA, eligible employees of covered employers are entitled to periods of unpaid leave for specified purposes, including serious health conditions. See 29 US.C. § 2612(a)(1); Engelhardt v. S.P. Richards Co., 472 F.3d 1, 3 (1st Cir. 2006). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, and the statute provides a private right of action to aggrieved employees. 29 U.S.C. §§ 2615(a)(1), 2617(a); Engelhardt, 472 F.3d at 3.

The Department of Labor, applying its authority under the FMLA, promulgated regulations about whether employers and employees are covered by the FMLA. Engelhardt, 472 F.3d at 3-4. Under the regulations, "[n]ormally the legal entity which employs the employee is the employer under FMLA." 29 C.F.R. § 825.104(c). And, "[w]here one corporation has an ownership interest in another corporation, it is a separate employer unless" it meets the "joint employment test" or the "integrated employer test." Id. §§ 825.104(c)(1), 825.104(c)(2) (integrated employer test), 825.106 (joint employment test); Engelhardt, 472 F.3d at 4-5 (observing that courts have held that there is a "strong presumption" that a parent entity is not an employer of its subsidiary's employees).

Domenichello does not attempt to apply either the integrated employer test or the joint employment test to show that Michael Baker International was his "employer" under that term's meaning under the FMLA. The lack of any meaningful analysis on this topic in Domenichello's briefs waives the issue. See Doherty v. Merck & Co., Inc., 892 F.3d 493, 500-01 (1st Cir. 2018) ("Such a skimpy effort to advance an issue . . . waives the issue."). In any event, all that Domenichello alleges about Michael Baker International is that it is affiliated, in an unspecified

13

way, with Tidal Basin.[5] Without any details about Michael Baker International and its relationship to Tidal Basin or Domenichello, the alleged facts are insufficient to meet either the integrated employer test or the joint employment test. See 29 C.F.R. §§ 825.104(c), 825.106. For those reasons, Domenichello's FMLA claims (Counts I and II) against Michael Baker International are dismissed.

> ii. *The Amended Complaint does not state claims against Tidal Basin or Michael Baker International for breach of the implied covenant of good faith and fair dealing.*

In Count III, Domenichello alleges that defendants breached the implied covenant of good faith and fair dealing by terminating his employment without adhering to the progressive disciplinary policy stated in the employee handbook. Tidal Basin and Michael Baker International argue that the employee handbook disclaims any contractual rights as to the progressive disciplinary policy. Domenichello responds that the disclaimer is ineffective because it was "generic" and "nested" in the body of the handbook. He also argues that terminating his employment in retaliation for exercising his FMLA rights breaches the implied covenant of good faith and fair dealing.

Domenichello's claim for breach of the implied covenant of good faith and fair dealing is premised on his alleged at-will employment contract with defendants. When an employment contract is "at will," "both parties are free at any time to terminate the employment relationship,

---

[5] In his proposed Second Amended Complaint, Domenichello clarifies that Michael Baker International is in fact the parent company of "Tidal Basin Holdco." Tidal Basin Holdco is the parent company of Rising Phoenix, which in turn is the parent company of "Tidal Basin Holdings." Tidal Basin Holdings, finally, is the parent company of Tidal Basin. The mere fact of ownership, however, without any further detail or information about the nature of the relationship, is not enough to meet either test. See 29 C.F.R. § 825.104(c) (creating presumption that a corporate owner is not an employer of its subsidiary's employees); Engelhardt, 472 F.3d at 8. Accordingly, these clarifications would not change the result.

14

with or without cause." Leeds v. BAE Sys., 165 N.H. 376, 379 (2013); J&M Lumber & Const. Co., Inc. v. Smyjunas, 161 N.H. 714, 725 (2011).[6]  Importantly, however, the terms of an at-will employment contract may be modified in the same way any other contract is formed, that is, by offer, acceptance, and consideration.  See Panto v. Moore Business Forms, Inc., 130 N.H. 730, 739-42 (1988) (Souter, J.).

Thus, an employee handbook that limits the circumstances in which an employer may terminate an at-will employee creates contractual rights in appropriate circumstances.  Casey v. St. Mary's Bank, No. 22-cv-252-PB, 2023 WL 3479600, at *3 (D.N.H. May 16, 2023).  But because the "normal principles of contract" apply, Panto, 130 N.H. at 742, an employer may also prevent an employee handbook from modifying an at-will employment contract's terms by including a written disclaimer that is sufficiently specific about which ostensibly contractual rights or terms it disclaims.  See Casey, 2023 WL 3479600, at *3; Balsamo v. Univ. Sys. Of N.H., No. 10-cv-500-PB, 2012 WL 683491, at *8 (D.N.H. Mar. 2, 2012) ("An employer who seeks to avoid creating an employment contract can do so via a written disclaimer in the handbook or policy that indicates that the document will not create contractual obligations."); see also Butler v. Walker Power, Inc., 137 N.H. 432, 436 (1993) (enforcing disclaimer of contractual rights contained in employee handbook).

Here, the progressive discipline policy provides, "Nothing in this policy provides any contractual rights regarding employee discipline or counseling, nor should anything in this policy be read or construed as modifying or altering the employment-at-will relationship between the

---

[6] In their briefs, the parties analyze Domenichello's breach of implied covenant claim under New Hampshire law.  The court follows the parties' implicit consent about the law that applies and does the same.  See Commonwealth Land Title Ins. Co. v. IDC Properties, Inc., 547 F.3d 15, 22 (1st Cir. 2008).

15

company and its employees." Doc. no. 19-2. This disclaimer is sufficiently specific to preclude any contractual rights as to the progressive discipline policy.

Domenichello argues that the disclaimer is ineffective because it "was not conspicuous but was 'nested' in the policy language," and thus does not "meet the standard set forth in" Balsamo, 2012 WL 683491 at *8, which enforced disclaimers that "appear[ed] on the top of each policy page" and "state[d] clearly that the [employee handbook] is not an employment contract." Balsamo, however, did not set or discuss any standard about how "conspicuous" a disclaimer need be to limit the creation of contractual rights. See 2012 WL 683491, at *8. Rather, the court merely found that by placing contractual-rights disclaimers next to each policy, the disclaimers placed "the reader on further notice that none of the policies give rise to enforceable contractual obligations." Id. (emphasis added). Similarly, here, the disclaimer is in a logical and prominent position at the beginning of the handbook's explanation of the progressive discipline policy, which was sufficient to place Domenichello on notice that the progressive discipline policy did not create enforceable contractual obligations.

Finally, Domenichello argues that retaliation is an impermissible act of bad faith which breaches the implied covenant of good faith and fair dealing even in an at-will employment contract. Domenichello appears to base this argument on Monge v. Beebe Rubber Company, 114 N.H. 130, 133 (1974), which held "that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not [in] the best interest of the economic system or the public good and constitutes a breach of the employment contract." Since Monge, however, courts have clarified that it recognizes not a claim for breach of the implied covenant of good faith and fair dealing in the at-will employment context, but a claim for the tort of wrongful termination. See Frechette v. Wal-Mart Stores, Inc., 925 F. Supp. 95, 98-99 (D.N.H.

1995) ("[A]ny claim of a terminated at-will employee based on a contract theory must still be brought under the rubric of wrongful termination and, as such, must satisfy the public policy component of that cause of action."); see also Howard v. Dorr Woolen Co., 120 N.H. 295, 297 (1980). A wrongful termination claim has specific elements that are distinct from those for breach of the implied covenant of good faith and fair dealing, see Howard, 120 N.H. at 297, and Domenichello did not identify any claim for wrongful termination in the Amended Complaint. Because Domenichello did not plead a wrongful termination claim in the Amended Complaint, the defendants lacked any opportunity to meaningfully respond to it.

For that reason, the court finds that the Amended Complaint does not contain a claim for wrongful termination and declines to address whether any such claim, if the complaint were amended to add it, would survive a motion to dismiss under Rule 12(b)(6). Domenichello's claim based on breach of the implied covenant of good faith and fair dealing, however, is dismissed as against both Michael Baker International and Tidal Basin for the reasons stated above.

## II.  Domenichello's Motion to Amend (Doc. No. 22)

Lastly, Domenichello moves to amend his complaint. The proposed Second Amended Complaint is largely unchanged from the Amended Complaint except that it adds three new defendants: Tidal Basin Holdings, Tidal Basin Holdco, and DC Capital Global, Inc. Domenichello does not allege additional facts about the new defendants beyond asserting that they are in a chain of ownership which leads to Tidal Basin. Defendants contend that the proposed Second Amended Complaint is futile for the same reasons as the Amended Complaint, namely, the court lacks personal jurisdiction, and the allegations are insufficient to state a claim for relief.

Rule 15(a)(2) governs the amendment of pleadings after a party is no longer able to amend the complaint as of right. Fed. R. Civ. P. 15(a)(2). Leave to file complaint amendments should

17

be "freely given" so long as there is no "apparent or declared reason" including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). The court has discretion to deny a motion to amend if "as a matter of law" the proposed amended complaint would be futile. Demars v. Gen. Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985). In assessing whether a proposed amended complaint would be futile, the court applies the same Rule 12(b)(6) standard and analysis that it would when presented with a motion to dismiss. Efron v. UBS Fin. Servs. Inc. of P.R., 96 F.4th 430, 437 (1st Cir. 2024).

Domenichello's proposed amendment – the addition of three new defendants – is futile. The facts alleged in the proposed Second Amended Complaint as to the three proposed new defendants are effectively identical to the facts alleged in the Amended Complaint as to Michael Baker International. The proposed Second Amended Complaint does not cure, or attempt to cure, any of the defects just discussed as to Michael Baker International. Therefore, the reasons why the Amended Complaint fails to state claims against Michael Baker International equally apply to the Second Amended Complaint and Tidal Basin Holdings, Tidal Basin Holdco, and DC Capital Global. The proposed Second Amended Complaint is therefore futile insofar as it modifies the Amended Complaint. Domenichello's motion to amend is denied.

## CONCLUSION

For the foregoing reasons, Michael Baker International's motion to dismiss (doc. no. 19) is granted. Tidal Basin's, Rising Phoenix's, and Adjusters International's motion to dismiss (doc. no. 20) is granted in part and denied in part. Domenichello's motion to amend (doc. no. 22) is denied.

18

Domenichello's claims against Rising Phoenix Holdings Corporation and Adjusters International Consulting are dismissed without prejudice for lack of personal jurisdiction. Domenichello's claims against Michael Baker International are dismissed. Count III is also dismissed as against Tidal Basin. Counts I and II, relating to violations of the FMLA and as against Tidal Basin only, are the sole claims remaining in this case.

SO ORDERED.

_____
Talesha L. Saint-Marc
United States Magistrate Judge

July 2, 2024

cc:   Counsel of Record